UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: _____

SHANTANEKA BAYNARD**,**

    Plaintiff,

v.

CLEVELAND CLINIC FLORIDA,

    Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, SHANTANEKA BAYNARD, by and through her undersigned counsel, sues the Defendant, CLEVELAND CLINIC FLORIDA, and alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action for damages and to remedy violations of the rights of SHANTANEKA BAYNARD under the Civil Rights Act of 1964, as amended ("Title VII") and the Florida Civil Rights Act of 1992, as amended ("Chapter 760"), to redress injuries done to her by the Defendant, CLEVELAND CLINIC FLORIDA ("Defendant").

2. The unlawful acts which gave rise to this Complaint occurred within Broward County, Florida during the Plaintiff's employment with Defendant, making venue proper in this District pursuant to 28 U.S.C. § 1391.

**PARTIES**

3. At all times material hereto, Plaintiff has been a citizen and resident of Broward County Florida and is otherwise *sui juris*.

1

4. As a dark-skinned Black woman, Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Florida Civil Rights Act of 1992, as amended ("Chapter 760"), because the terms, conditions, and privileges of her employment were altered because of her race and color.

5. Defendant is not a government agency. At all times material hereto, Defendant was Plaintiff's employer as defined by law.

6. Defendant has, at all times material hereto, employed 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with Title VII and the FCRA (42 U.S.C. §2000e(b); Fla. Stat. § 760.02(7)).

7. Plaintiff has exhausted her administrative remedies by filing a timely charge of discrimination against the Defendant with the Equal Employment Opportunity Commission, which was dually filed with the Florida Commission on Human Relations.

8. Plaintiff's charge was filed within 300 days after the first instance of discrimination occurred.

9. Plaintiff was issued a Notice of Right to Sue on January 25, 2021. This suit is filed in accordance with that Notice and within the applicable ninety (90) day time limitation (a copy of the Notice is attached hereto as Exhibit "A").

10. The Florida Commission on Human Relations did not issue a finding on Plaintiff's charge within 180 days of the filing of said charges.

**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

11. Defendant hired Plaintiff on April 13, 2015 as a phlebotomist and Plaintiff resigned on December 4, 2020.

12. The Plaintiff's job duties were drawing blood and assisting patients.

13. Plaintiff was qualified for the position she had based on her experience and training.

14. Plaintiff's last rate of pay was $17.25 per hour.

15. As Defendant was aware, Plaintiff is a dark-skinned, Black woman.

16. On May 14, 2018, a white patient came into the Defendant's lab to have her blood drawn. Gerard Molina a/k/a Eric, a phlebotomist who is assigned to provide lab services for admitted patients, drew her blood that day. On May 16th, 21sst, and 25th, the same patient came back and had her blood drawn in the emergency room department. She should have had her blood drawn in the clinic lab. However, Ms. Eileen Foley, the white supervisor of the lab, made reservations for the patient to have her blood drawn in the E.R.

17. On May 30, 2018, the patient came to the lab along with her son. The patient refused to have her blood drawn done by anyone on the transplant team or a phlebotomist in the lab. The phlebotomy team consists of five Black people and two Hispanic people. On the transplant team, there are two Black people. All of these individuals are trained and fully capable of taking a patient's blood. The patient requested that Mr. Molina draw her blood. Mr. Molina works on the hospital side and is assigned to draw the blood of the admitted patients. This patient was supposed to have her blood drawn in the outpatient clinic. Mr. Molina was off that day. On this particular day, there were many other people who were trained and capable of drawing her blood, including five African Americans. Instead of any of those fully capable people, the patient chose Joseph Cafiero, a Hispanic phlebotomist, to draw her blood. The patient was acting irate, and she wouldn't let anyone touch her. Her son was trying to calm her down.

18. On June 14, 2018, Ms. Foley, gave a printed face sheet to Tovi Brown, a Black phlebotomist. Tovi then gave the paper to the Plaintiff. On top of the face sheet, Ms. Foley wrote, "patient wants white person only to draw her blood." The Plaintiff said to Ms. Foley, "really, you

3

guys are allowing this at Cleveland Clinic?" Ms. Foley responded, "oh, the patient has psychological issues. The patient was told that we would not be able to make these accommodations for her anymore". Ms. Foley said that arrangements had already been made for either Mr. Molina or Marsha, a white phlebotomist, to draw the patient's blood.

19.     The following week, the same patient returned to have her blood work done. The Plaintiff emailed Jeanne Newman, in Human Resources, and Ms. Foley about the patient. Ms. Newman thanked the Plaintiff for making her aware of the situation and said that she would look into it. Ms. Foley responded via email that she was only doing what the transplant department asked her to do. Sherri Gross, the director of the lab, and Vincent Wright, the supervisor for registration, spoke with the patient in the supply room. They asked her if what was written on the face sheet was true. The patient denied it. Then, later that day, Ms. Gross told the Plaintiff that the patient denied requesting that only white people draw her blood. Ms. Gross then said that the patient had a Black aid, trying to imply that she could not be racist. Ms. Gross then admitted that she didn't know what to do. The Plaintiff showed Ms. Gross what Ms. Foley said in response to the Plaintiff's email on this matter. Ms. Gross said that what Ms. Foley wrote was not true and she would have Ms. Foley apologize to the Plaintiff.

20.     On June 21, 2018, Ms. Foley c asked to speak with Plaintiff. The Plaintiff followed Ms. Foley into the supply closet. The Plaintiff's coworker, Jacquelyn Peters, a Black phlebotomist, was also in the supply room. Ms. Foley apologized to the Plaintiff and again said that she was doing what the transplant department asked her to do. The Plaintiff replied, "so you knew it was wrong to discriminate but you felt it was okay to do it anyways?" Ms. Foley replied, "the patient has psychological issues." The Plaintiff said, "the patient is denying what you wrote on the paper." Ms. Foley responded, "well, maybe she got over it." Ms. Foley then said, "I was hurt too." Around

4

this time, Jacquelyn Peters, co-worker, exited the room. The Plaintiff realized the conversation was not going anywhere and attempted to leave. Right as the Plaintiff attempted to leave, Ms. Foley putting both of her hands on both of Plaintiff's arms in order to stop her from leaving the room. The Plaintiff demanded that Ms. Foley let go of her. Ms. Foley said, "see nobody can talk to you" and then finally moved away from the door.

21. When the Plaintiff returned to work, Ms. Gross, the director of the lab, asked how she was. The Plaintiff told Ms. Gross everything that had happened up to that point. Ms. Gross look surprised but did not say anything. The Plaintiff also emailed, Jeanne Newman in Human Resources regarding the issues.  On June 29, 2018, the Plaintiff had a meeting with Ms. Newman and another unidentified woman to discuss Defendant's investigation into the incident in the supply closet. Ms. Newman said that there were no witnesses to the incident, so nothing could be done.  Since the Defendant did not take any action, the Plaintiff filed a police report.

22. On July 16, 2018, the Plaintiff met with Denise Morris, the manager in Human Resources, to review the investigation report. Ms. Morris said, "we are closing the investigation, but I am going to keep my eyes and ears open." Ms. Morris excused Defendant's inaction by saying that Ms. Foley was retiring at the end of the year. In other words, the Defendant did nothing to stop the discriminatory behavior. Ms. Morris also sent the Plaintiff an email confirming she was closing the case.

23. The patient returned on June 28, 2018 and was told that her blood would be drawn by Tovi. As soon as the patient entered the lab, she said she was told that someone from upstairs was going to draw her blood. Ms. Gross and Ms. Foley again decided to honor the patient's request and had Mr. Molina draw her blood. Later, Ms. Gross told everyone in a meeting that the patient will be coming every week until she moves away.

24. In late July or early August, Dawn Simple, manager of patient experience, led a staff meeting and described the incident as a "miscommunication. The Defendant did nothing to ensure incidents like this would never happen again and Ms. Foley was never reprimanded.

25. In October or November of 2020, a Hispanic patient threatened the Plaintiff, physically touched her, and whispered a threat in her ear. Despite there being two witnesses and the Plaintiff notifying security and Claudia, Director of the Lab, the Defendant did not address the issue with the patient. Instead, again, the Defendant made excuses for the patient's behavior. =

26. Plaintiff has engaged the undersigned attorney to prosecute her claims and is entitled to recover her attorney's fees from Defendant pursuant to statute.

## COUNT I: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (Discrimination on the Basis of Race)

27. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 26, inclusive, as though same were fully re-written here

28. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, §§703(a), 706(a), and 706(g) for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Plaintiff was discriminated against on the basis of her race, Black.

29. Ms. Eileen Foley, Ms. Jeanne Newman, Ms. Sherri Gross, Ms. Denise Morris, at all times relevant, were acting within the course and scope of their employment for Defendant.

30. Because Plaintiff is Black, she was discriminated against by management, and the Defendant refused to take any action to prevent the discrimination.

31. Upon information and belief, non-Black, similarly situated employees are not treated in the same manner as Defendant treated Plaintiff.

32. Upon information and belief, the Defendant takes seriously the complaints of non-Black, similarly situated employees.

33. Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 USC §2000e2(a)(1) which resulted in Plaintiff, SHANTANEKA BAYNARD, being discriminated against.

34. Plaintiff is entitled to such affirmative relief as may be appropriate, including but not limited to, lost wages, benefits, and compensation for emotional distress pursuant to the provisions of Title VII of the Civil Rights Act of 1964, §706(g).

35. Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for her protected rights under Title VII of the Civil Rights Act of 1964. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of its employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in an amount to be determined at trial.

WHEREFORE, Plaintiff hereby requests that this Honorable Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including back pay, front pay, injury to her professional reputation, punitive damages, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with The Civil Rights Act of 1964, §706(g); attorney's costs, fees, and such other relief as the Court deems just and appropriate.

### **COUNT II: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992**
**(Discrimination on the Basis of Race)**

36. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 26, inclusive, as though same were fully re-written here.

37. The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in

personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

38. Plaintiff is Black and therefore a member of a protected class.

39. Because Plaintiff is Black, she was discriminated against by management, and the Defendant refused to take any action to prevent the discrimination.

40. Upon information and belief, non-Black, similarly situated employees are not treated in the same manner as Defendant treated Plaintiff.

41. Upon information and belief, the Defendant takes seriously the complaints of non-Black, similarly situated employees.

42. At all relevant and material times, Defendant failed to comply with the FCRA.

43. The discrimination of Plaintiff by Defendant was caused by Defendant being aware of Plaintiff's race.

44. At all times relevant, including the time of the unlawful and discriminatory treatment, Defendant was aware that Plaintiff was Black.

45. At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

46. The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

47. Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of her race in violation of the FCRA with respect to its decision to treat Plaintiff differently from other employees.

48.     Plaintiff's discrimination was directly and proximately caused by Defendant's unjustified discrimination against Plaintiff because she is Black, in violation of the FCRA.

49.     Any allegedly nondiscriminatory reason for the treatment of Plaintiff asserted by Defendant is a mere pretext for the actual reasons for the treatment; namely, Plaintiff's race.

50.     Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to her race.  The discrimination on the basis of race constitutes unlawful discrimination.

51.     As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered serious economic losses, punitive damages, as well as mental pain and suffering.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for embarrassment, anxiety, humiliation, and emotional distress, punitive damages, prejudgment interest on her damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

### COUNT III: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(Discrimination on the Basis of Color)**

52.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 26, inclusive, as though same were fully re-written here.

53.     Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, §§703(a), 706(a), and 706(g) for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Plaintiff was discriminated on the basis of her color, dark-skinned.

54. Ms. Eileen Foley, Ms. Jeanne Newman, Ms. Sherri Gross, Ms. Denise Morris, at all times relevant, were acting within the course and scope of their employment for Defendant.

55. Because Plaintiff is dark-skinned, she was discriminated against by management, and the Defendant refused to take any action to prevent the discrimination.

56. Upon information and belief, non-dark-skinned, similarly situated employees are not treated in the same manner as Defendant treated Plaintiff.

57. Upon information and belief, the Defendant takes seriously the complaints of non-dark-skinned, similarly situated employees.

58. Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 USC §2000e2(a)(1) which resulted in Plaintiff being discriminated against.

59. Plaintiff is entitled to such affirmative relief as may be appropriate, including but not limited to, lost wages, benefits, and compensation for emotional distress pursuant to the provisions of Title VII of the Civil Rights Act of 1964, §706(g).

60. Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for her protected rights under Title VII of the Civil Rights Act of 1964. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of its employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in an amount to be determined at trial.

WHEREFORE, Plaintiff hereby requests that this Honorable Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including back pay, front pay, injury to her professional reputation, emotional pain and suffering caused by Defendant's discriminatory treatment, and punitive damages in an amount to be determined at trial

and in accordance with The Civil Rights Act of 1964, §706(g); attorney's costs, fees, interest, and such other relief as the Court deems just and appropriate.

## **COUNT IV: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992**
**(Discrimination on the Basis of Color)**

61. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 26, inclusive, as though same were fully re-written here.

62. The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

63. Ms. Eileen Foley, Ms. Jeanne Newman, Ms. Sherri Gross, Ms. Denise Morris, at all times relevant, were acting within the course and scope of their employment for Defendant.

64. Because Plaintiff is dark-skinned, she was discriminated against by management, and the Defendant refused to take any action to prevent the discrimination.

65. Upon information and belief, non-dark-skinned, similarly situated employees are not treated in the same manner as Defendant treated Plaintiff.

66. Upon information and belief, the Defendant takes seriously the complaints of non-dark-skinned, similarly situated employees.

67. At all relevant and material times, Defendant failed to comply with the FCRA.

68. At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

69. The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

70. Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of her color in violation of the FCRA with respect to its decision to treat Plaintiff differently from other employees.

71. Plaintiff's discrimination was directly and proximately caused by Defendant's unjustified discrimination against Plaintiff because she is dark-skinned, in violation of the FCRA.

72. Any allegedly nondiscriminatory reason for the treatment of Plaintiff asserted by Defendant is a mere pretext for the actual reasons for the treatment; namely, Plaintiff's color.

73. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to her color.  The discrimination on the basis of color constitutes unlawful discrimination.

74. As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered serious economic losses, punitive damages, as well as mental pain and suffering.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for embarrassment, anxiety, humiliation, and emotional distress, punitive damages, prejudgment interest on her damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 26th day of April, 2021.

By: /s/ *Michelle Cohen Levy*
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com
Counsel for Plaintiff